313-0379 consolidated with 313-038 for oils and distribution. Republic Bank of Chicago. Accounted by Edward Floyd v. Village of Manhattan. Good afternoon, justices, counsel. My name is Edward Floyd. I represent Republic Bank of Chicago, the appellant. This matter comes before the court on motions to dismiss by the Village of Manhattan pursuant to Section 2-619, which were granted with no evidentiary basis for those motions. The only attachment being uncertified copies of certain plats of subdivision. I also thank the court for consolidating the oral arguments because that best replicates what happened in the trial court. That's the way the trial court handled them. These cases were called together, briefed together, ruled together to the extent that the order entered by the trial court dismissing the Village of Manhattan in both cases were identical down to the typos. And by consolidating the oral arguments, I hope that it will be more clear what our position is as to how the trial court erred. The consolidated oral arguments deal with two subdivisions. Both in Manhattan, in Will County, and one is called Stonegate. And Stonegate, at least as depicted on the plat, was envisioned, five plats, was envisioned to be 350 residential lots on 135 acres of real estate. So fairly big development. And the other was Tremor. And Tremor was somewhat smaller. It was 26 acres and envisioned approximately 26 residential lots, which would then include about 150 townhomes. Another similarity was that both of these developments were initiated by a developer. He's a defendant in each action. His name is Larry Sisk. And the subdivisions were started in about 2007, right at the height of the bust, and these developments quickly collapsed. Not even the basic infrastructure was ever completed, including roads or highways. There are no known residents of either subdivision, and they are defunct in all except depictions on a recorded plat. But there are important differences between these two subdivisions and the two cases that the trial court apparently never ascertained. In Tremor, there was no real estate dedicated to the village. None, zero, zip. The village does not dispute that. Rather, the recorded plat of subdivision, there was only one, clearly specified that the village was granted certain easement rights only, a non-possessory interest in Tremor, and part of that easement related to roads which were private roads, unequivocally stated private roads on the plat of subdivision. And these roads were dedicated in perpetuity to the homeowners association that were also described and stated in that plat of subdivision. The village of Manhattan in Tremor filed a motion to dismiss, and the motions to dismiss were also essentially identical, alleging that Republic Bank, by consenting to the plat, had waived or is it stopped from denying the validity of the easements and thereby consented to the plat of subdivision. But Republic Bank never disputed the grant easements. What the mortgage foreclosure action alleged was that it sought a determination that the easements subsequently recorded were subject and subordinate to the bank's prior filed first mortgage lien on private property. The trial court for its part largely rejected the waiver and estoppel arguments. In fact, at oral argument on both cases, the attorney for the village candidly said, no, we haven't proved estoppel. And that's withdrawn, but he said there was waiver. And the trial court, sui sponte, took the matter under advisement, and then sui sponte, in its order dismissing the village of Manhattan with prejudice, found that the controlling matter of law was the plat act. Now, I'm not suggesting that the court can't sui sponte, do what it thinks is appropriate. We're not contesting that, but the reliance upon the plat act relating to a recorded easement, particularly section 3 of the plat act, was clearly erroneous. And what the trial court said, quote, under the plat act, the plaintiff's dedication of roads and acknowledgement of the plat is a conveyance in fee simple as donated to the public. So there are at least three major errors in that finding. First, the plat act does not authorize the metamorphosis of a grant of easement into a dedication in fee simple in direct conflict and violation of the intent of the parties as expressly stated in the plat. Second, the plat act does not instruct that any underlying mortgage is extinguished or released. It should be noted that the trial court took special pain and special emphasis upon the fact that the language of the plat act, section 3, which is the only section relied upon by the trial court, was a conveyance in fee simple, which the trial court did not use. And third, the trial court erroneously interpreted it as lien free. But there is no legal support for that interpretation of the phrase fee simple. In 40 years, I've had hundreds of mortgage foreclosure actions, and every mortgage foreclosure action contains a defendant who owns the property in fee simple. In fact, it's a necessary party under the foreclosure act to name the current owner as a party defendant. Rather, as we stressed in the trial court and stressed to this court, the issue of lien free is governed by the Mortgage Act, which determines whether a mortgage or any real estate is in existence or has been properly extinguished. In this case, the trial court completely ignored the requirement of the Mortgage Act by finding that Republic Bank's mortgage on the train to a real estate had been extinguished by the recording of the plat of subdivision which had been granted to the village as an easement only on private property. This finding is both contrary to law and illogical. There is no legal support for the contention that a subsequently created easement takes precedence over a prior filed mortgage, and certainly no authority has been cited by the village of Manhattan for that proposition and none by the trial court. Similarly, in Stonegate, the trial court exceeded its authority on a 2-619 motion to dismiss. The five plats stated that the various roads were, quote, dedicated, or some of the plats say, quote, hereby dedicated, and did not specify to whom. It's uncontroverted. They're part of the record. We've attached copies as a courtesy to the court in our appendix and our reply. There's no question about it. I think the basic point is that to whom is always unspecified in the 350 lots and the five separate recorded plats of subdivision. And because the Plat Act had been brought up sui sponte, it had not been briefed. And in our motion for reconsideration, well, it actually was another firm. I came in after that. It was stressed that there were a number of problems concerning utilizing the Plat Act where the identity of the grantee is never specified. And the trial court, in a essentially three-line order, denied the motion for reconsideration and provided no legal or factual basis. What was clear was that the trial court inferred, without any evidence whatsoever, that the recipient of the dedication must, in effect, always be the village. It's a road, right? It's dedicated? It goes to the village. And what is so opportune by the court consolidating these oral arguments is in Tremor, same developer, basically same group of people, it was clearly dedicated to the homeowners association. Clearly and unequivocally, no one disputes that. And in addition, the trial court was supposed to take all inferences in the non-movement's favor, in this case, Republic Bank. But unfortunately, the trial court determined to do the opposite and gave every inference to the movement. The village of Manhattan determined, well, it's got to go to the village, right? Where else could it go? And then the issue of acceptance of the dedication came up. And even the village got concerned. And it was given an opportunity to respond to the motion for reconsideration. And two days before their brief was due, the village passed a resolution in each case. And Stonegate said, well, you know, we think we've accepted the dedication previously. No date, no manner, nothing. We've accepted it previously, but to the extent that we haven't, we accept it now without the improvements, without the roads. Now, our position is, what does that mean? And that's contrary to law. Acceptance of a dedication must be clear and unequivocal. How do you accept the dedication of the roads without the roads themselves? Well, what was going on was clear. It's a mess out there. And the village didn't want to be financially responsible for the roads, to repair them, to maintain them, to complete them. So they said, well, we accept the dedication without the roads, without the improvements, is specifically what they said. And our position is that that's not legally possible. You can't have it both ways like that. You're either in or out. This is a village. These are roads. And because their acceptance was not clear and unequivocal, it's no acceptance at all. And the same game was being played in Tremor. We've accepted this. Don't ask us when, don't ask us how, but we have it. We accept it now, but still only an easement. And that, thanks so much. Okay. Concerning the village's position, in my opinion, it's very hard to articulate. All I want to stress is that in their response, in this court, and in the trial court below, they never responded to the Mortgage Act. They never responded concerning its applicability or inapplicability and how a mortgage can be determined by the trial court to have been released and extinguished without compliance with the Mortgage Act. They never discussed, it never discusses the easement and the differences between foreclosing perhaps on an easement or a fee-simple conveyance, and no response concerning the lack of identification of the grantee in the Stonegate plat of subdivisions. We are asking for a day in court. We got thrown out right away without a scintilla of evidence, without an opportunity to be heard, and we are respectfully requesting that the judgments in favor of the village be vacated and reversed, and we be remanded to the trial court for further proceedings. Thank you. Thank you, Mr. Troy. Mr. Murfin? Justices, counsel, let me start out with the vagueness issue, and I'll start with the complaint. The complaint in the case alleges for Phase I says the Phase I plat also dedicated the roads to the village. Similar allegations are made for Phase II, Phase III, and Phase IV. That's in the complaint. At least at the time the complaint was filed, plaintiff was not unsure as to what hereby dedicated means. They believed that it meant that it was dedication to the village. Our main point here is there was a certification by Republic Bank that said, quote, or Republic Bank, quote, hereby consents to the recording of the subdivision is hereby shown. That included easements. That included the roads. Now, under the Plat Act, with regards to the roads, that meant that it was in fee simple. It also, under Section III, says that the acknowledgement of recordings shall be held in courts to be a conveyance in fee simple. Certainly, I think counsel is correct when he said easements are not going to be in fee simple. If there wasn't a statutory dedication, Section III doesn't come into play, does it? If there was not a statutory dedication, Section III would not come into play. And with regard to this matter, in the Traymore plat, there was a grant of easement rights. That's correct. As compared to any fee simple. That's correct. So it would not, I don't think, apply to Traymore. At the Stonegate plats, there was a lot of ambiguity about what rights or interests were even being granted to the village. I mean, there's stuff about hereby dedicated, heretofore dedicated. Well, I think it says hereby dedicated with regards to all the roads, and then there's actually more specificity with regards to the water easements, et cetera, because there's also a provision on the back of it that more clearly defines what those easements are meant to be. It names the roads mentioned. But it also says hereby dedicated right under the road. Yeah. Now, granted, it doesn't say hereby dedicated to the village. In comparison of Traymore to the Stonegate ones, there is no such language in the Traymore ones. Is it to the residents or the village? It doesn't say, does it? It does not say. It does not say. And with regard to acceptance of the supposed dedication, the alleged dedication, what's the evidence that there was ever an acceptance? I know that after the action was passed and the village then did something that we think we've already accepted, but if we didn't, we accept it now or something like that. I think there was that. I mean, I think there probably is more evidence on that that could be developed at trial. But beyond that, what is here is, first of all, the village has defended it. It's similar, I think, to filing action on it for a declaration of it. It shows that the village is accepting the interest in it. See, if the village defends an incident action, you're viewing that as transmuting into an acceptance of the dedication? I think in this case it is. And certainly if it wasn't, certainly the motion to dismiss based on it in terms of showing what the plats were. And so your argument has to be that it's some kind of by implication or an implicit acceptance of the dedication. Yes, and there are many cases where it can be by implication. Certainly that's where a lawsuit is filed, not defended, isn't it? Yes, yes, it is. It's where something is filed actively, not you're defending something. Correct. I think you're, like the General Auto Station case? I think if we actually got into it further, I mean, if it does go back, then we'd probably be getting into the annexation agreement, the fact that it was required to have roads, going through the whole process of it. I'm just talking about the 619. Certainly, yes. All we have is a very narrow. Yes, very narrow in terms of the 619. I don't think either side wants us to have some broader. No, no, no, no. Neither side wants a broader agreement. And I agree. Okay. What we have here is we have, in terms of the 619, you have the plaques, you have the defense, you also have the resolution that comes after the action is filed and after the defense is made. I mean, to the argument that you'd have to have an acceptance of the dedication prior to the foreclosure proceeding, your argument is a takeoff of, well, defending is the same thing as filing a lawsuit. Yes. By implication. By implication, yes. Now, the other thing is, though, one of the things is that the offer has never been rescinded in terms of the dedication. The plat has never been sought to be vacated either. There's no evidence of that. There's no argument on that. Now, here's the problem. So the acceptance can happen at any time in that sense. Right now the subdivision developments have been basically abandoned, haven't they? There actually are, as the plan concedes, three lots have been sold. The roads are, when you say abandoned, roads, and this is not the record. The bank extinguished their interest in those three lots. Yes, they did. And that was part of the recognition also of the easement by doing that, or by the plats by doing that. The bank gave up any interest when those lots were sold to those lots. It did. So that's not part of what this case is about. Well, it is, because that's what brings us sort of within Smith. And there's something structured on those. There are some, and this is not in the record, there are some structures that are out there. I don't recall what lots they're on and what subdivisions they're on. And I don't recall if it's trade or something. I don't remember seeing anything like that in the record. And that's what I don't recall. I don't think that portion of it's been developed. The roads are, I think, everything done except for the final binder on the roads. But that's not in the record. So you are limited to the record with the 2619 at this point in time. What I think this comes down to, though, really, is public policy in terms of what does it mean when a mortgagee signs off on plats that have dedications and have easements? As I understand it, what the relief is that is being asked for is they want an order granting possession of the subject property and declaring that all existing subordinate interests and rights to possession of the subject property are terminated. Now, I've taken that to mean that they want the easements extinguished also. They want the roads extinguished. So I think really the questions are, is it really the bank's position that this goes through on a foreclosure, goes through a share of sale, somebody owns it, and then the roads don't get to be used for roads, the drainage easements don't get to be used for drainage easements? Let's talk about the public policy here. As I understand the law, and some of it is vague here and very old compared to what we're doing today, but the mere act of recording and a plat or a deed does not by itself constitute an acceptance because the public authorities, if they accept something, they're accepting taking on responsibilities too, and so the law doesn't impose that on the public body. That's correct. Because somebody would have the burden of caring for and maintaining the dedicated property. So it's like an offer. Yes. And so there has to be an acceptance by the public authority for that, and again, there's a dearth of, it seems, law on this, but there is also law that if there's a foreclosure of a trust deed or mortgage, that is a withdrawal of the offer if there's a foreclosure proceeding going on, if there was not an acceptance of the offer of dedication. The Hilmer... And I'm not sure, and perhaps the question also is who has to withdraw, where does the withdrawal have to be? That portion hasn't really been argued in this case, I don't think. I mean, you know, there's some indication that the foreclosure proceeding is, as a practical matter, a revocation of the offer to dedicate the property and also foreclosing the right to accept the dedication. But here you also have, and here... It's very old, and we do have sort of certainly two conflicting statutes with sort of different goals and different ideas in them. The thing is here, you have the bank saying on one hand, it seems to be, give us these roads that are shown only in the plats, but let's take away what we have agreed to in the plats and keep part of the plats. They're really trying to abrogate what is there, the roads and the easements. It seems... But not actually, is any of that there? The roads are there, yes. The roads are there with gutters, first course, the small binder, not final binder. So they're there. In fact, if this were a situation... And the thing is, I think in terms of the issues, in terms of whether they're there or not, might affect the equities, but it shouldn't affect the law in terms of the interpretation. As I understand it, your position in the village is, as it stands now, your village is accepting the burden of curing and maintaining the dedicated property. Right now. Well, the one caveat is the reason the resolution was passed the way it was is the work has not been done. So it wasn't with the idea of we've accepted the improvements as being completed. We have accepted the dedication of where it is, but not the completion. Is it completed? As I said, it doesn't have the final binder on it. I think it is my recollection that's going out where that's what's missing. So if you accept the village's position is they've accepted this and therefore accepted the burden of curing and maintaining this, you're saying you're accepting but not the burden of maintaining it? No, we've accepted, but what we didn't want to waive is the developer's duty to complete it. It's like if we're accepting, say, a lot with a house on it. We'll accept the house, we'll accept the lot, but the roof's not completed. Well, the house isn't completed in these places. Well, no, the houses are not completed in these cases either. But it's one thing to accept the land and the property and the easements and to say, but this is not meant to say you have finished all your work. This is a subdivision that's not completed. It's not completed. It's being foreclosed on. And it's being foreclosed. In fact, the lots, this is also sort of an interesting case because the only thing that's being foreclosed on here are the roads and the easements. The bank has not foreclosed on the lots. In fact, and again, this is going far afield, but those have been, they're in the process of being sold for tax liens if they've not already been sold, the lots. And why isn't that here? Well, to some extent, I think it's a question of, okay, we've got roads. We are accepting them. There are also special service areas on them that go with it. It is trying to keep some order with it. I mean, there is part of me, candidly, at times has said, if these go, if there's something else, the problem is, at least for the three lot owners, the three that have been sold, we care whether those have access. We care whether those have drainage. We care if the lots that are sold at a tax sale or someplace else, whether those have roads, whether those have drainage. Those lots are still there. They are in existence at least on paper and as platted out. But as platted out, it has a legal significance still. And I think going back, one of the things you were mentioning in terms of, you know, the idea where we just can't drop this off and file a plat and say, here, you take care of this. That's right. But this also was approved by the Villages Zoning and Planning Committee. That's also on the plat. And this is also, and again, if it goes back down, we're going to show all of the things that went through, that it was required by the annexation agreement, which is probably, might be an acceptance in itself. This is a very narrow issue that we have here in front of us about the 619 motion. And I guess what's worrying me is you have to follow the, you know, before you ever get to Section 3, which is a powerful section, you have to have this, some acceptance, and you have to have a dedication specifically. And there seems to be a lot of things here that rely on cascading inferences. There are certainly, I mean, there are inferences, though, that as I said, at least in terms of where the dedication goes to, that was recognized in the complaint. I know the complaint, you know, says that, and it was drafted, but then questions about, there's allegations and complaints, and then there's whether or not, you know, this was a 619, now it's 615. That's correct. Motion. But we're taking, but within the 619, we're taking those allegations. It's true that they were actually dedicated to the village. To whom? No, the complaint says to the village. It says the roads were dedicated to the village. But there was other information. And there were other reasons, yes. But there's other information that's part of the complaint that's part of this record. Yes. But I mean, I think that stands against at least the plaintiffs in this case in terms of their idea of being, claiming a vagueness that really isn't there. Well, if the other documents negate that allegation, what are we left with? I don't think they negate that. I mean, the question, I suppose, is what does hereby dedicated mean? Is it a fair inference? Not only is it a fair inference, it's one that was drawn by the plaintiffs. And I think that's sufficient. Thank you, Your Honor. Thank you. Thank you, Mr. McLaughlin. Mr. Freud, any rebuttal? Yes, thank you, Your Honor. First of all, I disagree that it's the plat and dedications contained therein are offers that can be opened for perpetuity. The law is very clear that when a notice of foreclosure, a statutory notice, is filed, anyone taking an interest in the real estate takes that interest subject to the foreclosure action. At the very best, if the court accepts everything that the village indicates, it accepted the dedications in both cases not only after the suit was filed, but after the motion to dismiss was granted. And the purpose of a notice of foreclosure is obviously to avoid endless and circuitous litigation. A plaintiff is entitled to some finality in a mortgage foreclosure concerning the state of the record. Under any scenario, the village, at best, accepted whatever it accepted, with or without improvements, long after the notice of foreclosure was filed. Has your complaint, the way you drafted it, the way the complaint was drafted, has that created an irrebuttable presumption there was proper dedication because the complaint allegations say that there was a dedication? Absolutely not. I mean, we've never disputed the dedication. So you don't dispute there was a dedication to the village? Oh, to the village? Yes, Your Honor, we do. And it's hard to keep track of the village's shifting position. Let's just talk about the complaint that's here. I've never heard that argument before. It was never raised in the trial court. It was never raised in any of the briefs. I'd love to be unequivocal. I'm very suspicious of the argument that the complaint admits that the dedications were to the village. There were some things to the village, not the roads. Are you saying all the roads or just the roads in Traymore? Okay, any roads, Stonegate or Traymore. So where were the roads in Stonegate dedicated to? We say it's unclear, and the developer had a clear history as shown by Traymore of donating to the homeowners associations. And the village only relied on the plats. This argument concerning the complaint just changed. Well, Traymore had easement rights. Easement rights, that's right, over private property. Right, so those would be easements because the dedication would be to a homeowners association. But are you saying that the contemplation for the roads in Stonegate was for private ownership to a homeowners association? I think that's likely, and as my friend and colleague Mr. Murphy said, that would be developed at trial, and I couldn't agree with him more. I mean, the court's correct. I mean, do we have a truncated record here? We don't know what's going on. I certainly don't agree that the roads are 95% done or 90% or just the final lift, okay? My information is directly to the contrary, but the trial court was just insistent that it was over, and nothing was going to convince the trial court to the contrary, not the issue of acceptance, not the issue of identity or anything else. And I know that this is a hard-working trial judge, and I respect the trial judge, and I respect him, but this was not the trial judge's finest hour. All we want is an opportunity to prove our case. Yes, sir? I'm going to ask you a non-substantive question as well. I want to ask counsel, why does the bank care? What is the bank's interest in proposing a gun? Well, as the record clearly reflects, we're out $15 million. This is a small community bank, and it wants to keep certain critical portions of its collateral under its control. And it does not have the financial strength at this point to, you know, foreclose on anything and everything, but we have a right to foreclose under the law and under our mortgage whatever portion of our collateral we deem appropriate, and that's why we're here. It's too difficult for banks to make any earnings these days to just relinquish our collateral. I won't say release. That's a dirty word here in this case because there was no release. There never was any release. There's not a single evidence of any intent to release, and the one thing you'll never hear the village talk about is the Mortgage Act. And the essence of what the trial judge said was, hey, this mortgage has been released. This is a compliance and peace act. Thank you very much. Thanks so much. We can hear both of your arguments today, but we'll take this matter under advisement, thanks to the written disposition, within a short date. We'll now take a, I guess we'll adjourn until tomorrow morning.